UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                          Case No.: 8:22-cr-257-VMC-MRM

PEDRO LUIS ARZOLA, JR.

_____/

**ORDER**

This matter comes before the Court pursuant to the United States of America's Motion for Review and Revocation of Release Order (Doc. # 11), filed on September 8, 2022. Defendant Pedro Luis Arzola, Jr. responded on September 19, 2022. (Doc. # 23). The Court held a hearing on the Motion on October 5, 2022. For the reasons that follow, the Motion is granted. The Court revokes the release order and orders that Arzola remain detained.

**I.   Legal Standard**

The United States filed its Motion pursuant to 18 U.S.C. § 3145(a)(1). That statute states: "If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court - (1) the attorney for the Government may file, with the court having original

1

jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1). Such motion is to be "determined promptly." Id.

"The District Court Judge with original jurisdiction then reviews de novo the Magistrate Judge's order." United States v. Noland-James, No. CR19-261-RSM, 2020 WL 1904049, at *2 (W.D. Wash. Apr. 17, 2020); see also United States v. Hurtado, 779 F.2d 1467, 1481 (11th Cir. 1985) ("[W]e follow suit and require that our district courts undertake *de novo* review of the pretrial detention determinations of the magistrates."). Thus, this Court, through its de novo review, must decide "whether any condition or combination of conditions . . . will reasonably assure the appearance of [Arzola] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

To determine what conditions of release will reasonably assure the appearance of the defendant as required and the safety of any other person and the community, the Court considers:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

>   (2) the weight of the evidence against the person;
>
>   (3) the history and characteristics of the person, including
>
>>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The United States' burden as to risk of flight is preponderance of the evidence, and its burden as to dangerousness is clear and convincing evidence. See United States v. Quartermaine, 913 F.2d 910, 915 (11th Cir. 1990) ("The issue is: whether the government proved by a preponderance of the evidence that Quartermaine posed a risk of flight, and whether the government proved by clear and convincing evidence that Quartermaine posed a danger to the community."). "[I]t has been held 'that a finding of either danger to the community or risk of flight will be

3

sufficient to detain the defendant pending trial.'" United States v. King, 849 F.2d 485, 488 (11th Cir. 1988) (quoting United States v. Portes, 786 F.2d 758, 765 (7th Cir. 1985)).

## II. Discussion

The Court and the parties are all familiar with the facts and procedural history of this case, which were discussed in detail on the record at the hearing and were ably described in the United States' Motion. For that reason, the Court outlines here only the necessary factual findings and reasons for detention.

Arzola is a convicted felon charged with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g). (Doc. # 1). In late May 2022, Arzola was in the parking lot of a Tampa nightclub when a shooting began, initiated by people unassociated with Arzola. After the shooting began, the United States alleges that Arzola obtained a gun from his friend's car and returned fire — actions caught on security video. During the shooting, Arzola's friend was shot and killed. Immediately after the shooting, Arzola left the scene and, only hours later, flew to New York to stay with family friends.

He was arrested there over two months later on August 11, 2022, by agents from the Bureau of Alcohol, Tobacco,

4

Firearms, and Explosives ("ATF"). (Doc. # 11 at 1; Doc. # 23 at 2). These ATF agents recorded a post-Miranda interview with Arzola, and relevant statements by Arzola during the interview have been presented to the Court. (Doc. # 11 at 6-8).

A Magistrate Judge in the Southern District of New York entered an order directing that Arzola be released under a number of pretrial release conditions, including (1) a $75,000 personal recognizance bond co-signed by two people — his mother and another financially responsible person, (2) travel restricted to the Middle District of Florida, (3) surrender any travel documents, (4) Pretrial Services supervision, (5) home detention with location-monitoring technology as directed by Pretrial Services, (6) maintain current employment, and (7) no possession of a firearm, destructive device, or dangerous weapon. (Doc. # 11-2 at 17-19; Doc. # 23 at 4). This Court granted the United States of America's motion to stay the release order pending this Court's resolution of the instant Motion for Review and Revocation of Release Order. (Doc. # 9).

As stated on the record at that October 5, 2022, hearing, the United States has established by a preponderance of the evidence that Arzola presents a serious flight risk, even

5

though it has not established that Arzola is a danger to the community by clear and convincing evidence. Thus, the Court — upon de novo review of the Magistrate's release order and specified conditions of pretrial release — determines that no condition or combination of conditions will reasonably assure the appearance of Arzola as required.

Most importantly, the Court finds that Arzola flew to New York only hours after the shooting to avoid law enforcement. And, despite becoming aware of the subsequent warrant for his arrest, Arzola remained in New York for two months before he was arrested there by ATF agents. The Court finds Arzola's own recorded statements to ATF agents on the day of his arrest conclusive on these points. The most relevant statements are produced below.

(1) At approximately 7 minutes and 15 seconds:

Arzola: "I left because I know they got me shooting on camera . . . that's why I left."

(2) At approximately 15 minutes and 35 seconds:

ATF Agent: "What made you come up here? The fact that they went to your grandma's?"

Arzola: "No, uh . . . to be honest I've been up here before my [inaudible] my aunt's husband. I was like uh its pretty cool over there. It's nice. It's different. And then I had asked her if it was okay . . . there's only one thing I have a warrant. I made it seem something I made it seem like it wasn't really nothing than it really is."

> ATF Agent: "She didn't know it was for a shooting?"
>
> Arzola: "No. She thought it was something petty."
>
> (3) <u>At approximately 39 minutes</u>:
>
> ATF Agent: "So why did you change your [phone] number then? Because we were looking for you?"
>
> Arzola: "Yes. Cuz I knew you guys were gonna be looking for me. I knew your guys were gonna be looking for my old number. So I changed it."

(Doc. # 11 at 6-8).

Although Arzola may also have been in fear for his life and distraught over the death of his friend, his primary motivation for leaving the state was to evade law enforcement. True, Arzola flew to New York a few days before a warrant for his arrest was issued. Nevertheless, Arzola is a convicted felon who knew that his participation in the shooting was caught on camera — a fact he mentioned in his ATF interview. <u>See</u> (Doc. # 11 at 6) ("I left because I know they got me shooting on camera . . . that's why I left."). The Court's conclusion that Arzola fled to New York in anticipation of criminal charges related to the shooting is bolstered by Arzola's subsequent changing of his phone number — an action Arzola admitted to taking because he knew law enforcement used phone numbers to track people. As the Court also finds that Arzola was aware that he was wanted by law enforcement,

7

the Court is further troubled by Arzola's choice to stay in New York for over two months, rather than return to Florida to face the charges against him.

The Court has considered many potential conditions of release to determine whether they may reasonably assure Arzola's appearance in court. But ultimately, the other conditions considered by the Court and discussed at the hearing do not provide reasonable assurance that Arzola will appear. As Arzola previously left his family and his job to flee to New York for over two months — a period ended only by his arrest by federal agents — the Court finds that Arzola's employment, family connections, and a bond secured by his family members would not suffice to prevent Arzola from fleeing again.

Nor does the Court believe that putting Arzola on home detention will reasonably assure his appearance. As ordered by the Magistrate Judge, Arzola's home detention would permit him to continue employment as a painter with his brother's business. The Court is concerned that Arzola's job as a painter may be subject to a non-traditional schedule and, as a loyal family member, Arzola's brother has a greater interest in concealing any pretrial release violations Arzola might commit than in assuring Arzola's compliance with those

8

conditions. These aspects of his employment leave the home detention condition open for easy manipulation. Total house arrest is also insufficient because of the high risk that Arzola could extricate himself from his ankle monitor and flee again.

In short, no condition or combination of conditions will reasonably assure the appearance of Arzola as required. Therefore, the Court orders Arzola be detained pending trial.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

The United States of America's Motion for Review and Revocation of Release Order (Doc. # 11) is **GRANTED.** The Court revokes the Magistrate Judge's release order and orders that Arzola be detained pending trial.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 5th day of October, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE